IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDUL-HADI MUHAMMAD AL-SIBA'I, by and through his next friend, ABDULLA MUHAMMAD AL-SIBA'I,[1] ) ) ) ) Petitioners, ) ) v. ) ) GEORGE W. BUSH, DONALD RUMSFELD, ) ARMY BRIG. GEN. JAY HOOD, and ARMY COL. ) MIKE BUMGARNER, ) ) Respondents. ) | No. 1:05 CV 01667 (RBW) |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR ORDER REGARDING NOTICE OF TRANSFER**

Pursuant to the Court's inherent authority to impose reasonable conditions to a stay of proceedings, Petitioner Abdul-Hadi Muhammad Al-Siba'i respectfully moves for an order requiring advance notice of any transfer of Petitioner or, at a minimum, requiring Respondents to provide the Court with the declaration this Court ordered in *Almurbati v. Bush*, 366 F. Supp. 2d 72 (D.D.C. Apr. 14, 2005). In *Almurbati*, this Court required the Respondents to submit a declaration to the Court advising the Court of any transfer of petitioners and certifying that any such transfer or repatriation was not made for the purpose of merely continuing petitioners' detention on behalf of the United States or for the purpose of extinguishing this Court's jurisdiction over the petitioners' action for *habeas corpus* relief for a reason unrelated to the decision that the petitioners' detention is no longer warranted by the United States. It has been

---

[1] Petitioners' names were previously misspelled "Abdalhadi M. Al-Sopai" and "Abdullah M. Al-Sopai," respectively, on Petitioner's original petition for writ of *habeas corpus*. Counsel for Petitioner have notified Respondents' counsel of the correct spelling and have filed an unopposed motion to modify caption and for leave to amend petition for writ of *habeas corpus* to reflect the correct English spellings of these names.

CHICAGO_1339845_2

publicly reported that Respondents have removed other detainees from Guantánamo to foreign territories, including a number of detainees transferred to Saudi Arabia who were immediately imprisoned by the Saudi government. Respondents have announced that they intend to transfer other detainees, but they have refused to identify these transferees, and Respondents' counsel has refused to disclose whether Respondents intend to transfer Petitioner to Saudi Arabia or some other foreign government. In other cases pending in this district, judges have ordered that the Court and counsel be afforded advance notice of the removal of a petitioner. We are mindful of the fact that Your Honor has denied requests for advance notice of removal in *Almurbati* and other cases. It is not our intent to ask Your Honor to reconsider prior decisions except, insofar as Respondents are asking this Court to stay this proceeding, we believe the Court has the authority to require notice of removal as a condition for the stay. Several Judges of this Court have so held. We request, at a minimum, that Respondents be required to file the declaration ordered in *Almurbati*.

## STATEMENT OF FACTS

Petitioner Abdul-Hadi Muhammad Al-Siba'i is a Saudi citizen who, on information and belief, has been held unlawfully and virtually incommunicado in Respondents' custody and control at Guantánamo for approximately four years. On August 22, 2005, Petitioner, through his attorneys, filed a petition for writ of *habeas corpus* in this Court. Respondents have not yet filed a factual return.[2] On November 10, 2005, Respondents moved for a stay of proceedings pending the decision of the Court of Appeals for the District of Columbia in *In re Guantánamo Bay Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005), and *Khalid v. Bush, Boumediene v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005).

---

[2] Concurrently with this motion, Petitioner has filed a motion to require Respondents to file a factual return.

Counsel submitted their applications for security clearance on September 1, 7, and 14, 2005. Three of Petitioner's attorneys received interim clearances within the past week. Accordingly, counsel have not yet been able to meet with Petitioner, and he has not yet had the opportunity to communicate to counsel his own views as to his possible transfer.

A.   **Transfer of Detainees from Guantánamo**

Prior to March 29, 2005, Respondents disclosed that they had transferred 211 detainees from Guantánamo to foreign countries. Sixty-five (65) of those detainees "were provided to foreign governments for ongoing detention." *Abdah v. Bush*, 2005 U.S. Dist. LEXIS 4942, at *12 (D.D.C. Mar. 29, 2005) (citing declarations by "high-level Department of State and Department of Defense officials"). Four of the detainees were "sent abroad [to Saudi Arabia] on the condition that they continue to be detained." *Abdah v. Bush*, 2005 U.S. Dist. LEXIS 4144, at *16 (D.D.C. Mar. 12, 2005).

On November 5, 2005, the Department of Defense announced "the release of one [Guantánamo] detainee to Saudi Arabia and the transfer of three detainees to Bahrain." (Dept. of Defense News Release No. 1151-05, Nov. 5, 2005, www.dod.gov/releases/2005/nr20051105-5073.html, attached as Exhibit A.) The Department did not disclose whether these detainees now face further detention in Saudi Arabia and Bahrain. The Department did state that it "expects that there will be other transfers or releases of detainees." (*Id.*) Respondents have not identified which other detainees may be transferred to foreign countries, and Respondents' counsel specifically refused to disclose whether they intend to transfer or "release" Petitioner to Saudi Arabia or another country. (*See* Exhibit F, Declaration of Patricia A. Bronte.) Thus, that information resides exclusively with Respondents. As Judge Collyer noted, "the only way that anyone could know that a transfer is about to happen, *i.e.*, be 'immediate,' is if one is within the

3

chain of command within the federal departments that consult on such matters or if there were information revealed *sotto voce* to a reporter." *Abdah*, 2005 U.S. Dist. LEXIS 4144, at *16.

**B.      Transfers to Saudi Arabia**

Judge Richard Roberts noted in a similar case that detainees' concern about transfer to another country with a history of torturing prisoners is not merely "fanciful." *El-Banna v. Bush*, No. 04-1144, at 4 (D.D.C. Apr. 8, 2005). Petitioner's counsel are informed and believe that the United States seeks to transfer detainees from Saudi Arabia, such as Petitioner, to Saudi Arabia or other countries that routinely practice torture. Amnesty International has reported that "[f]ive Saudi Arabian nationals returned to Saudi Arabia from Guantánamo Bay [in 2003] were locked up upon arrival and their legal status remain[ed] shrouded in secrecy" one year later. (Amnesty International USA, "The Gulf and the Arabian Peninsula: Human rights fall victim to the 'War on Terror,'" at 14, June 21, 2004, www.amnestyusa.org/countries/saudi_arabia/ document.do?id, attached as Exhibit B.)

The U.S. government recognizes the danger of torture and abuse to those detained in Saudi Arabia, saying the following in its August 2005 Background Note on Saudi Arabia:

> Despite close cooperation on security issues, the United States remains concerned about human rights conditions in Saudi Arabia. *Principal human rights problems include abuse of prisoners and incommunicado detention.*

(U.S. Department of State, *Background Note: Saudi Arabia*, http://www.state.gov/r/pa/ei/bgn/ 3584.htm, emphasis added, attached as Exhibit C.) In its 2003 Country Report on Human Rights Practices in Saudi Arabia, the State Department stated:

> [T]here were credible reports that the authorities abused detainees, both citizens and foreigners. Ministry of Interior officials were responsible for most incidents of abuse of prisoners, including beatings, whippings, and sleep deprivation. In addition, there were allegations of torture, including allegations of beatings with sticks and suspension from bars by handcuffs.

4

> There were reports that torture and abuse were used to obtain confessions from prisoners.

(U.S. Department of State, *Country Reports on Human Rights Practices 2003:  Saudi Arabia,* http://www.state.gov/g/drl/rls/hrrpt/2003/27937.htm, attached as Exhibit D.)  In 2005, the State Department reiterated its concern about Saudi torture and abuse of prisoners, also noting that:

> During [2004], the Mutawwa'in [religious police] harassed, abused, and detained citizens and foreigners of both sexes. . . . Mutawwa'in abuses continued during the year, despite an initial decrease following the May 2003 terrorist attacks.

(U.S. Department of State, *Country Reports on Human Rights Practices 2004:  Saudi Arabia,* http://www.state.gov/g/drl/rls/hrrpt/2004/41731.htm, attached as Exhibit E.)

## **ARGUMENT**

The Respondents' motion to stay proceedings is pending before this Court.  "Coextensive with the district court's inherent power to stay proceedings is the court's power to craft a stay that balances the hardships to the parties."  *Al-Oshan v. Bush*, No. 05-520 (Mar. 31, 2005), at 2.  As Judge Roberts has explained:

> A primary purpose of a stay pending resolution of the issues on appeal is to preserve the status quo among the parties. . . . A court may, in appropriate situations, specify protective conditions in balancing the hardship necessarily imposed on the party whose suit . . . has been stayed pending appeal. . . . Where, as here, the condition imposed on the proponent of the stay is "neither heavy nor unexpected," imposing a protective condition is well within a court's discretion.

*Ahmed v. Bush*, 2005 U.S. Dist. LEXIS 14024, at *2-3 (D.D.C. July 8, 2005) (citations omitted).  In this case, as in *Ahmed*, imposing on Respondents the condition of advance notice of Petitioner's transfer would be "neither heavy nor unexpected."  On the contrary, it would merely require Respondents to "file a few pieces of paper."  *Al-Marri v. Bush*, 2005 U.S. Dist. LEXIS 6259, at *19-20 (D.D.C. Apr. 4, 2005).  Under these circumstances, the Court could consider

5

conditioning the stay of proceedings on Respondents' advance notice of any transfer of Petitioner to a foreign country. We request, at a minimum, as a condition of a stay, that the Court direct the Respondents to file the declaration required in *Almurbati*.

To the best of our knowledge, four judges of this District have denied motions for advance notice of transfer in Guantánamo detainee cases. In *Almurbati*, Your Honor denied the request for a preliminary injunction requiring 30 days' advance notice of transfer, but "require[d] the respondents to submit a declaration to this Court advising it of any transfers and certifying that any such transfers or repatriations were not made for the purpose of merely continuing the petitioners' detention on behalf of the United States or for the purpose of extinguishing this Court's jurisdiction over the petitioners' actions for habeas relief for a reason unrelated to the decision that the petitioners' detention is no longer warranted by the United States." 366 F. Supp. 2d at 73-74, 77 (noting that "the DoD represents that 'of the over [200] transfers, both for release and for continued detention . . ., those have all been repatriations back to the home country.'"). Your Honor also relied on *Almurbati* to deny a detainee's motion for notice of transfer in *Battayav v. Bush*, No. 05-714 (May 3, 2005), but did not require Respondents to submit to the Court the declaration and certification required in *Almurbati* – apparently because Respondents already had an ongoing obligation to notify the Court of any change in circumstances.

Similarly, Judge Collyer denied a motion for advance notice of transfer, but nevertheless ordered Respondents to give the Court 30 days' advance notice before transferring the Libyan-born detainee to his home country. *Deghayes v. Bush*, No. 04-2215 (June 14, 2005).[3]

---

[3] Judge Leon also denied a detainee's preliminary injunction motion, but instead of requesting advance notice of transfer, the detainee had sought a blanket prohibition on transfer to Egypt. *Sliti v. Bush*, 2005 U.S. Dist. LEXIS 18888, at *2 (Aug. 30, 2005).

6

Similarly, relying on denials by government officials of any intent to circumvent the court's jurisdiction or to transfer detainees for ongoing detention in foreign countries, Judge Bates denied preliminary injunctions in four cases. *Al-Shabany v. Bush*, No. 05-2029 (Nov. 17, 2005); *Zaid v. Bush*, No. 05-1646 (Oct. 25, 2005); *O.K. v. Bush*, 377 F. Supp. 2d 102; *Al-Anazi v. Bush*, 370 F. Supp. 2d 188. In *Al-Anazi*, Judge Bates simultaneously denied a preliminary injunction regarding advance notice and granted Respondents' request for a stay of proceedings. The petitioners apparently did not request advance notice as a condition of granting the stay. *See id.* at 192-93. Judge Lamberth relied on Judge Bates's ruling in *Al-Anazi* to reach the same result in *Attash v. Bush*, No. 05-1592 (Sept. 1, 2005).

Six judges of this District have granted advance notice in 25 other Guantánamo detainee cases. In two cases, Judge Huvelle ordered Respondents to provide advance notice of any intended transfer of detainees, unless Respondents have "reached a diplomatic understanding with the transferee country that a petitioner's transfer from Guantánamo is for release only." *Kurnaz v. Bush* and *Ameziane v. Bush*, 2005 U.S. Dist. LEXIS 6560, at *4 (Apr. 12, 2005). Judge Kennedy granted preliminary injunctions in three cases to require Respondents to provide 30 days' advance notice before "transporting or removing any of Petitioners from Guantánamo Bay Naval Base." *Abdah v. Bush*, 2005 U.S. Dist. LEXIS 4942, at *24 (Mar. 29, 2005); *Anam v. Bush*, No. 04-1194 (May 9, 2005); *Al-Mohammed v. Bush*, No. 05-247 (Mar. 30, 2005). Similarly, Judge Kessler granted preliminary injunctions on the advance notice issue in four cases: *Alhami v. Bush*, No. 05-359 (June 9, 2005); *Al-Adahi v. Bush*, No. 05-280 (Apr. 28, 2005); *Al-Joudi v. Bush*, 2005 U.S. Dist. LEXIS 6265 (Apr. 4, 2005), involving four Saudi Arabian detainees, and *Al-Marri v. Bush*, 2005 U.S. Dist. LEXIS 6259 (Apr. 4, 2005), involving a detainee from Qatar. As a condition of staying the proceedings, Judge Richard Roberts and

7

Judge Urbina each ordered Respondents in six cases to provide advance notice of transfers. Judge Roberts ruled in *Ahmed v. Bush*, 2005 U.S. Dist. LEXIS 14024 (July 8, 2005); *Al Daini v. Bush*, No. 05-634 (June 6, 2005); *Adem v. Bush*, No. 05-0723 (June 6, 2005); *El-Banna v. Bush*, No. 04-1144 (Apr. 8, 2005); *Abdullah v. Bush*, No. 04-23 (Apr. 8, 2005); and *Al Rashaidan v. Bush*, No. 05-586 (Apr. 8, 2005). Judge Urbina ruled in *Amir v. Bush*, No. 05-1724 (Oct. 5, 2005); *Hatim v. Bush*, No. 05-1429 (Aug. 22, 2005); *Al-Hela v. Bush*, No. 05-1048 (June 3, 2005); *Tumani v. Bush*, No. 05-526 (Apr. 6, 2005); *Qayed v. Bush*, No. 05-454 (Apr. 6, 2005); and *Al-Oshan v. Bush*, No. 05-520 (Mar. 31, 2005). In three cases, Judge Friedman relied on Judge Kennedy's decision in *Abdah* and Judge Urbina's decision in *Al-Oshan* in ordering Respondents to provide advance notice of transfers of detainees. *Al-Shiry v. Bush*, No. 05-490 (Apr. 1, 2005); *Al-Wazan v. Bush*, No. 05-329 (Apr. 1, 2005); *see also Mokit v. Bush*, No. 05-0621 (June 16, 2005). In a fourth case, Judge Friedman ordered advance notice of transfer *sua sponte*, in response to the detainee's motion for a preliminary injunction prohibiting rendition. *Paracha v. Bush*, No. 04-2022 (June 16, 2005).[4]

---

[4] Three judges of this District have also granted temporary restraining orders enjoining Respondents from transferring detainees until their preliminary injunction motions are decided. *See Zakirjan v. Bush*, No. 05-2053 (Nov. 7, 2005) (Kennedy, J.); *Alladeen v. Bush*, No. 05-0833 (Oct. 27, 2005) (Roberts, J.); *Abdah v. Bush*, 2005 U.S. Dist. LEXIS 4144 (Mar. 12, 2005) (Collyer, J.). On March 12, 2005, Judge Collyer granted a TRO to 14 Yemeni detainees in *Abdah*, partially in reliance on a *New York Times* report of a Defense Department plan "to transfer more than half of the GTMO detainees to prisons in Saudi Arabia, Afghanistan, and Yemen." But, the next day, Judge Collyer denied a similar TRO motion purportedly filed on behalf of every single Guantánamo detainee, noting the "conspicuous[] absen[ce of] sufficient evidence that any of the Petitioners . . . could be at risk of an immediate transfer and continued indeterminate detention." *Does 1-570 v. Bush*, 2005 U.S. Dist. LEXIS 6417, at *8-9.

CHICAGO_1339845_2

**CONCLUSION**

For all the reasons set forth above, Petitioner respectfully asks the Court to condition the Respondents' request for a stay on the entry of an Order requiring the Respondents to provide 30 days' advance notice of any transfer of Petitioner or, in the alternative, to file a declaration regarding Petitioner in the form set forth in *Almurbati*.

Respectfully submitted,

___/s/ Daniel Mach_____   Dated: November 21, 2005
One of the Attorneys for Petitioner

| | |
|---|---|
| Thomas P. Sullivan | Daniel Mach (Admitted in D.D.C.) |
| Jeffrey D. Colman | JENNER & BLOCK LLP |
| David J. Bradford | 601 Thirteenth Street, N.W., Suite 1200 |
| Patricia A. Bronte | Washington, D.C. 20005-3823 |
| Wade A. Thomson | Tel: (202) 639-6000 |
| Maya D. Nath | Fax: (202) 639-6066 |

JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
Tel: (312) 923-9350
Fax: (312) 527-0484

*Of Counsel*
Barbara Olshansky (BO3635)
Tina Monshipour Foster (TF5556)
Gitanjali S. Gutierrez (GG1234)
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6464
Fax: (212) 614-6499

9